# In The Federal District Court for Maryland

HD

| | | |
|---|---|---|
| Kevin A. Soper (Pro Se) | * | Rcv'd by: _____ |
| | * | |
| v | * Case Number | SAG 2 6 CV 3 1 3 9 |
| | * | |
| Officer Rose of The Baltimore County, Maryland Police Dept., Et, Al | * | |
| | * Plaintiff consents to Magistrate Jurisdiction | |
| | * Jury Trial Demanded | |

USDC- BALTIMORE
'26 AUG 10 PM3:08

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983 AND PENDENT STATE LAW CLAIMS

Plaintiff Kevin A. Soper, proceeding pro se, brings this action for damages and injunctive relief against the Baltimore County Police Department ("BCPD"), its officers in their individual and official capacities, and certain United States Postal Service ("USPS") employees in their individual capacities, and in support thereof states as follows:

## I. INTRODUCTION

1. This is a civil rights action arising from two separate but related incidents in which officers of the BCPD and employees of the USPS conspired to retaliate against, falsely arrest, and maliciously prosecute Plaintiff Kevin A. Soper for exercising his clearly established First Amendment right to gather news and record public officials in a public place.

2. On December 29, 2022, USPS employees at the Post Office in Essex, Maryland became hostile to Mr. Soper's lawful recording activity inside the public lobby. To suppress his rights, they initiated a "Heckler's Veto" by inciting customers to hostility, and when Mr. Soper retreated to a secondary lobby to de-escalate, they unlawfully imprisoned him by locking both the interior and exterior doors. They then called the BCPD and, in concert with responding officers, fabricated statements to create a pretext to trespass then arrest him on trespassing charges.

3. On April 11, 2023, while lawfully present on a public sidewalk adjacent to the same post office[1], Mr. Soper was again targeted. BCPD officers, acting on

---

1  Mr. Soper visited the sidewalk adjacent to the Post Office parking lot that day armed with the County GIS maps and aerosol cans of shaving cream in order to mark and record where he was standing when he was previously arrested without causing any property damage. Mr Soper never stepped onto Post Office property armed with this information.

information from a USPS manager, arrested him for trespassing and malicious destruction of property for drawing a straight line in shaving cream on the grass. The officers did no investigation at the scene.

4. Both sets of charges were pretextual, retaliatory, and lacked probable cause. This was confirmed on August 10, 2023, when Plaintiff was found **NOT GUILTY** on all charges from the first incident and the State entered a **nolle prosequi** on all charges from the second incident.

5. The BCPD's actions are the result of an official policy, custom, or practice of failing to train its officers on the public's clearly established First Amendment right to record, leading directly to the constitutional violations suffered by Plaintiff.

6. Plaintiff seeks compensatory and punitive damages against the individual defendants for the violation of his rights under the First and Fourth Amendments to the United States Constitution, damages against the BCPD for its unconstitutional policies under Monell, and damages for pendent state law claims including malicious prosecution, abuse of process, civil conspiracy, and intentional infliction of emotional distress.

## II. JURISDICTION AND VENUE

7. This action arises under the Constitution and laws of the United States, particularly 42 U.S.C. §1983. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§1331 and 1343.

8. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367, as they arise from the same common nucleus of operative facts as the federal claims.

9. Venue is proper in the District of Maryland pursuant to 28 U.S.C. §1391(b), as all events giving rise to the claims occurred within this judicial district.

## III. PARTIES

10. **Plaintiff Kevin A. Soper** is a citizen of the United States and a resident of Belair, Maryland. He is a journalist and civil rights activist who documents the conduct of public officials.

11. **Defendant Baltimore County Police Department (BCPD)** is a municipal law enforcement agency and a subdivision of Baltimore County, a body politic organized under the laws of the State of Maryland. It is responsible for the

training, supervision, and discipline of its officers.

12. **Defendant Officer Rose, #6638,** is a law enforcement officer employed by BCPD. At all times relevant, he was acting under color of state law. He is sued in his individual and official capacities.

13. **Defendant Officer Ordak, #5886, i**s a law enforcement officer employed by BCPD. At all times relevant, he was acting under color of state law. He is sued in his individual and official capacities.

14. **Defendant Corporal Pichardo, #5398,** is a law enforcement officer employed by BCPD. At all times relevant, he was acting under color of state law. He is sued in his individual and official capacities.

15. **Defendant Sergeant Callas, #5716,** is a law enforcement officer employed by BCPD. At all times relevant, he was acting under color of state law. He is sued in his individual and official capacities.

16. **Defendant Officer O'Neill, #6345,** is a law enforcement officer employed by BCPD. At all times relevant, he was acting under color of state law. He is sued in his individual and official capacities.

17. **Defendant Sharice Buckner-Hedgepeth** is an employee of the United States Postal Service. At all times relevant, she was acting under color of state law by virtue of her conspiracy and joint action with BCPD officers. She is sued in her individual capacity.

18. **Defendant Eric Jay** is an employee of the United States Postal Service. At all times relevant, he was acting under color of state law by virtue of his conspiracy and joint action with BCPD officers. He is sued in his individual capacity.

19. **Defendant Latonya Showell** (DOB 10/8/71) is a manager or supervisor for the United States Postal Service. At all times relevant, she was acting under color of state law by virtue of her conspiracy and joint action with BCPD officers. She is sued in her individual capacity.

20. **Defendants Captain Joseph Peach,** sued in his individual and official capacities. At all times relevant, the individual BCPD Defendants were acting as agents and/or employees of Defendant Peach and within the scope of their employment. Captain Peach is a final policy maker as Captain of the Essex Precinct.

## IV. STATEMENT OF FACTS

### The Lawful Right to Record in a Post Office

21. The First Amendment to the U.S. Constitution protects the right to gather

information about what public officials do on public property, including the right to record matters of public interest. This right is expressly codified in federal regulations governing conduct on postal property. **39 C.F.R. § 232.1(i)** states that "photographs for news... purposes may be taken in entrances, lobbies, foyers, corridors, or auditoriums when used for public meetings." The Post Office has two distinct lobby areas: the "entry lobby area" and the "retail lobby area." These areas are separated by a lockable door. The entry lobby area is located directly behind the main entrance doors of the post office, before the lockable door that leads to the retail lobby where postal transactions occur.

22. This right is further affirmed by **USPS Poster 7**, "Rules for Conduct on Postal Property," which is required to be posted in every post office lobby and was posted in the Essex Post Office lobby. It reiterates the right to take photographs for news purposes. This right is also affirmed by Department of Homeland Security regulations at **41 C.F.R. § 102-74.420** and by **DHS/FPS Operational Readiness Order HQ-ORO-002-2018**, which expressly states that "photography and videotaping, absent a criminal predicate, is a First Amendment protected activity."Plaintiff captured all events described herein on video.

### BCPD's Unconstitutional Failure to Train

23. Upon information and belief, Defendant BCPD maintains no specific policy, directive, or training protocol governing the right of media or the public to record law enforcement or public officials in public places. BCPD's only policy for guidance on media access distinguishes between "crime or accident scenes" (where media are treated differently from the public) but provides no instruction for ordinary public settings like post office lobbies or sidewalks. This absence of policy constitutes deliberate indifference to the clearly established First Amendment rights of the public. Captain Peach is the final policymaker for the Essex Precinct and failed for the same reasons to protect the Constitutional rights of Mr Soper.

24. As a direct and proximate result of this failure to train, BCPD officers, including the individual Defendants named herein, repeatedly demonstrated ignorance of and hostility toward the constitutional right to record. Officers Rose, Ordak, Pichardo, Callas, and O'Neill acted without any institutional understanding that Plaintiff's recording was lawful, protected activity, leading directly to the constitutional violations described below.

### Incident of December 29, 2022: Unlawful Imprisonment and Retaliatory Arrest (Case No. D-08-CR-22-015198)

25. On December 29, 2022, Plaintiff entered the Post Office, located in Essex, MD, to conduct postal business and to exercise his First Amendment rights to record and gather news in the public lobby.

26. USPS employees, including Defendants Sharice Buckner and Eric Jay, became hostile to Plaintiff's recording. Rather than respecting his constitutional rights, they initiated a "Heckler's Veto" by escalating the situation and inciting customers inside the retail lobby to react negatively to Plaintiff's protected activity. They made it known to the customers that they would not be serving anyone as long as "he was in here recording". Their deliberate escalation caused customers to become irritated and hostile toward Plaintiff. In response to this Heckler's Veto, that is, the employees' intentional incitement of third-party hostility toward his protected speech, assembly, and press activities, Plaintiff removed himself from the retail lobby area to the entry lobby area in order to de-escalate the situation and to continue his lawful newsgathering without further confrontation and so that the customers could be served. Furthermore, he believed that the Police were called and desired to remain on scene so as not to give the impression of flight.

27. After Plaintiff had peaceably removed himself to the entry lobby area, Defendant Eric Jay told Mr Soper to remain there and then, before BCPD arrived, deliberately locked the door separating the entry lobby from the retail lobby, thereby trapping Plaintiff in the entry lobby area. The USPS employee also locked the main entrance door to the post office. By locking both doors, the USPS employees effectively imprisoned Plaintiff in the entry lobby area, preventing his free movement and egress. The USPS employee locked these doors for the purpose of suppressing Plaintiff's First Amendment activity and to create a pretext for his arrest. They could not lawfully remove him for exercising his constitutional rights, so they resorted to physical confinement and escalation to manufacture a confrontation that would further justify police involvement.

28. At approximately 1530 hours, BCPD Officers Rose (#6638), Sergeant Callas, #5716 and Ordak (#5886) responded to the scene. Upon arrival, they found Plaintiff confined in the entry lobby area, unable to exit because the USPS employees had locked the doors. Rather than recognizing that Plaintiff had been unlawfully imprisoned and that his presence in a public lobby was protected by the First Amendment, Officers Rose and Ordak treated the situation as a trespass investigation without input from Mr Soper.

29. Officers Rose and Ordak, upon arrival, immediately treated Plaintiff's protected First Amendment activity as suspicious, referencing a DHS terrorism awareness campaign as a pretext for their investigation. He was advised that he was being detained. They failed to recognize that Plaintiff had been the victim of an unlawful

confinement by USPS employees or that his presence in the public lobby, whether entry lobby or retail lobby, was lawful protected activity. Poster 7 is prominently posted in the Retail Lobby area.

30. In a concerted effort to create a false pretext for Plaintiff's arrest, Defendants Buckner and Jay knowingly provided false statements to Officers Rose and Ordak. They falsely claimed Plaintiff had been disruptive, had yelled "I'm your boss, you do what I say," and that customers had complained he was "dropping f-bombs." These statements were fabricated to create a false impression of criminal conduct and to conceal the employees' own unconstitutional conduct in initiating a Heckler's Veto and unlawfully imprisoning Plaintiff in the entry lobby. Based solely on these fabricated statements, and in retaliation for Plaintiff's continued recording and assertion of his rights, and without regard for the fact that Plaintiff had been unlawfully confined by USPS employees in the entry lobby. Officers Rose and Ordak, at the direction of Corporal Pichardo (#5398) and Sergeant Callas (#5716), arrested Plaintiff.

31. Soper challenged the BCPD Officers who eventually advised him that he was trespassed from the building. BCPD escorted Soper from the Foyer to the USPS Public Parking Lot. Soper walked about the lot while BCPD Officer continued to engage him. Soper while still in the public parking area recorded officers vehicles in order to acquire further identification of them stating that he would be filing a complaint against them. One of the BCPD vehicles had it's CAD screen left open and Soper videoed it's contents. The BCPD Officer who used the vehicle became irritated and another BCPD Officer witnessing the confrontation returned inside the USPS Building where he returned with a USPS Employee and solicited a trespass from her. The USPS Employee advised Soper that he was also trespassed from the Public Parking area and Soper left the lot and stood on the public sidewalk. Soper protested the BCPD Officers actions and as a BCPD Officer returned to his vehicle he became irritated at Soper's protest and arrested him on the public sidewalk for his speech. The trespass warning was issued as a pretext to punish Plaintiff for exercising his First Amendment rights and to retroactively justify the unlawful confinement and arrest that had already occurred.

32. Plaintiff was charged with Trespassing on Posted Property, Disorderly Conduct, and Failure to Obey a Lawful Order. He was held until posting bond.

**Incident of April 11, 2023: Second Retaliatory Arrest (Case No. D-08-CR-23-002464)**

33. Plaintiff in this incident was charged with Malicious Destruction of Property (Value < $1,000), Trespass on Private Property, and Littering (<100 LBS). The trespass charge was based on the prior unlawful order, and the malicious destruction charge was baseless, as drawing on a public sidewalk with a water-soluble substance like shaving cream causes no property damage.

34. While on the public sidewalk, Plaintiff used three canisters of shaving cream to draw a 15-yard line on the right of way grass, an act of expressive, symbolic speech intended to show the property line demarcation to record for exculpatory evidence from his prior trespass charge. BCPD Officer O'Neill (#6345), Ofc Rose and Cpl Picardo responded to the call and observed Plaintiff. Officer O'Neill initiated contact with USPS Manager Latonya Showell. Defendant Showell, aware of the prior incident and the trespass order, conspired with Officer O'Neill to effectuate a second arrest. Based on information from Defendant Showell and in retaliation for Plaintiff's continued First Amendment activities, Officer O'Neill arrested Plaintiff on order of Cpl Picardo

35. Plaintiff was on a public sidewalk adjacent to the same post office property, an area not included by the original (and unlawful) trespass order and subsequent arrest.

### Favorable Termination of All Criminal Charges

36. On August 10, 2023, Plaintiff appeared for trial before the Honorable Michael T. Pate in the District Court for Baltimore County. After trial, Plaintiff was found **NOT GUILTY** on all three charges from the December 29, 2022 incident: Trespassing, Disorderly Conduct, and Failure to Obey. On the same day, August 10, 2023, the State's Attorney for Baltimore County entered a **nolle prosequi** on all three charges from the April 11, 2023 incident: Malicious Destruction, Trespass, and Littering. The disposition of all criminal proceedings was a termination in Plaintiff's favor.

## V. CLAIMS

## COUNT 1: FIRST AMENDMENT RETALIATION (42 U.S.C. § 1983) (Against All Individual Defendants)

37. Plaintiff incorporates by reference all preceding paragraphs. Plaintiff's conduct on both December 29, 2022, and April 11, 2023, recording public officials in a public place, expressive conduct on a public sidewalk, was protected by the First Amendment. The USPS employees' conduct constitutes a classic Heckler's Veto: unable to lawfully stop Plaintiff's protected speech themselves,

they deliberately incited third parties (customers) to hostility and then used that manufactured hostility, combined with physical confinement (locking the doors), as a pretext to summon police and suppress his constitutionally protected activity.

38. The individual Defendants' actions, including unlawful confinement, making false statements, issuing a trespass order, arresting, and initiating criminal charges, were taken in retaliation for Plaintiff's exercise of his clearly established First Amendment rights.

39. A person of ordinary firmness would be chilled from engaging in similar activity by the Defendants' conduct.

40. The retaliatory animus of the Defendants was the but-for cause of Plaintiff's arrests and prosecutions. There was no probable cause to support any of the charges. The charges were terminated in Plaintiff's favor.

41. As a direct and proximate result of the individual Defendants' unconstitutional retaliatory acts, Plaintiff suffered damages, including loss of liberty, emotional distress, humiliation, and costs associated with his criminal defense.

## COUNT 2: MALICIOUS PROSECUTION / FOURTH AMENDMENT (42 U.S.C. § 1983) (Against All Individual Defendants)

42. Plaintiff incorporates by reference all preceding paragraphs.

43. The individual Defendants initiated and continued criminal proceedings against Plaintiff without probable cause, in violation of his Fourth Amendment right to be free from unreasonable seizures. The criminal proceedings were terminated in Plaintiff's favor.

44. The individual Defendants acted with malice, for a purpose other than bringing an offender to justice, namely to retaliate against Plaintiff for his First Amendment activities and to punish him for recording them. As a direct and proximate result of this malicious prosecution, Plaintiff suffered an unlawful seizure and deprivation of liberty, as well as emotional distress, reputational harm, and other damages.

## COUNT 3: CIVIL CONSPIRACY (42 U.S.C. § 1983) (Against All Individual Defendants)

45. Plaintiff incorporates by reference all preceding paragraphs.
Beginning on or about December 29, 2022, and continuing thereafter, the individual Defendants (USPS employees Buckner, Jay, and Showell, and BCPD

Officers Rose, Ordak, Pichardo, Callas, and O'Neill) reached an agreement or a meeting of the minds to violate Plaintiff's constitutional rights. In furtherance of the conspiracy, the USPS employees committed a Heckler's Veto by inciting customers against Plaintiff, deliberately escalated the situation to force Plaintiff to retreat to the entry lobby, and then unlawfully imprisoned him there by locking both the interior and exterior doors, creating the very confrontation they then used to justify police intervention and arrest.

46. In furtherance of the conspiracy, Defendants committed several overt acts, including but not limited to: refusing to provide service for approximately 10 customers, unlawfully imprisoning Plaintiff in the post office lobby; making and relying upon fabricated statements to manufacture probable cause through coercion and suggestion by the responding officers; issuing a retaliatory and overbroad trespass order; and initiating two separate baseless criminal arrests and prosecutions.
The object of the conspiracy was to punish, harass, and intimidate Plaintiff for exercising his First Amendment rights and to prevent him from engaging in such activities in the future.
As a direct and proximate result of this conspiracy, Plaintiff's constitutional rights were violated, and he suffered financial and emotional damages.

## COUNT 4: MUNICIPAL LIABILITY UNDER *MONELL* (42 U.S.C. § 1983) (Against Defendant BCPD)

47. Plaintiff incorporates by reference all preceding paragraphs.
Defendant BCPD acted with deliberate indifference to the constitutional rights of individuals, including Plaintiff, by failing to adequately train, supervise, or discipline its officers regarding the clearly established First Amendment right to record public officials in public places. BCPD's failure to train or create a policy is evidenced by its lack of any specific policy on the matter and by the repeated constitutional violations committed by its officers in this case, demonstrating a pattern of misunderstanding or disregarding First Amendment protections.
48. This failure to train was the moving force behind the constitutional violations suffered by Plaintiff. Had the BCPD officers been properly trained, they would have recognized Plaintiff's conduct as protected and would not have arrested or charged him.
49. As a direct and proximate result of BCPD's unconstitutional custom, policy, or practice, Plaintiff suffered the violation of his rights and resulting mental and financial damages.

## VI. PENDENT STATE LAW CLAIMS

### COUNT 5: MALICIOUS PROSECUTION (MARYLAND COMMON LAW)
### (Against All Individual Defendants)

50. Plaintiff incorporates by reference all preceding paragraphs.
The individual Defendants instituted and continued criminal proceedings against Plaintiff on two separate occasions. Both proceedings were terminated in Plaintiff's favor on August 10, 2023. There was a complete absence of probable cause for any of the charges brought against Plaintiff. His conduct was, at all times, lawful and constitutionally protected.
51. The individual Defendants acted with malice, for the improper purpose of retaliating against Plaintiff and suppressing his First Amendment rights, rather than to bring an offender to justice.
52. As a direct and proximate result of the Defendants' malicious prosecution, Plaintiff suffered damages, including but not limited to loss of liberty, emotional distress, humiliation, reputational harm, and legal expenses.

### COUNT 6: ABUSE OF PROCESS (MARYLAND COMMON LAW) (Against All Individual Defendants)

53. Plaintiff incorporates by reference all preceding paragraphs.
The individual Defendants willfully used legal process, including criminal complaints, statements of charges, and a trespass order, for an ulterior purpose not contemplated by law, namely to harass, intimidate, and punish Plaintiff for exercising his First Amendment rights.
54. The process was improperly used after its issuance to effectuate two unlawful arrests and to maintain two baseless prosecutions against Plaintiff, satisfying the requirement of an improper arrest of the person.
As a direct and proximate result of the Defendants' perverted use of process, Plaintiff suffered damages.

### COUNT 7: CIVIL CONSPIRACY (MARYLAND COMMON LAW) (Against All Individual Defendants)

55. Plaintiff incorporates by reference all preceding paragraphs.
The individual Defendants formed a confederation of two or more persons by agreement or understanding to accomplish the unlawful acts of maliciously

prosecuting and abusing the process against Plaintiff. Each Defendant was legally capable of committing the underlying torts of malicious prosecution and abuse of process. In furtherance of this conspiracy, the USPS employees initiated a Heckler's Veto by deliberately inciting customers to hostility toward Plaintiff's protected speech; caused Plaintiff to retreat to the entry lobby to de-escalate; and then unlawfully imprisoned him in that locked entry lobby by securing both the interior door to the retail lobby and the exterior main entrance door, manufacturing a confrontation that the police then exploited to effect an unlawful arrest.

56. In furtherance of this conspiracy, the Defendants committed numerous unlawful and tortious acts, including fabricating evidence, effectuating arrests without probable cause, and pursuing charges they knew to be baseless.

As a direct and proximate result of this conspiracy, Plaintiff suffered actual legal an financial damages.

## COUNT 8: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED) (MARYLAND COMMON LAW) (Against All Individual Defendants)

57. Plaintiff incorporates by reference all preceding paragraphs.

The conduct of the individual Defendants, conspiring to fabricate evidence, unlawfully imprisoning Plaintiff with consent of BCPD, and subjecting him to two separate retaliatory arrests and malicious prosecutions over a period of months, was intentional and reckless.

58. This conduct was extreme and outrageous, going beyond all possible bounds of decency and is regarded as atrocious and utterly intolerable in a civilized community.

59. There is a direct causal connection between the Defendants' wrongful conduct and Plaintiff's emotional distress.

As a result of the Defendants' outrageous conduct, Plaintiff has suffered severe emotional distress, including anxiety, humiliation, fear of law enforcement, and distress over the protracted legal proceedings, which has substantially interfered with his ability to function and tend to necessary matters.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Kevin A. Soper respectfully requests that this Honorable Court enter judgment in his favor and against the Defendants as follows:

A. A declaration that the actions of the Defendants violated Plaintiff's rights under the

First and Fourth Amendments to the U.S. Constitution and Maryland common law;

 B. An award of compensatory damages against all Defendants, jointly and severally, in an amount to be determined at trial;

 C. An award of punitive damages against all individual Defendants in their individual capacities in an amount to be determined at trial;

 D. An award of reasonable pre and post-judgment interest, fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable law;

 E. An injunction ordering Defendant BCPD to develop and implement constitutionally adequate policies and training regarding the public's right to record, and to expunge all records of Plaintiff's unlawful arrests; and

 F. Any and all other and further relief as this Court deems just and proper.

**Plaintiff demands a trial by jury on all issues so triable.**

**Respectfully submitted,**

Kevin A. Soper(pro se)        Date

8/10/2026

704 Cedarday Dr

Belair, Md 21015

newlifebearing@yahoo.com